OTTERBOURG, STEINDLER,
HOUSTON & ROSEN, P.C.
230 Park Avenue
New York, New York
Telephone: (212) 661-9100
Facsimile: (212) 682-6104
Scott L. Hazan, Esq. (SH 0650)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

In re:

NORTHWEST AIRLINES CORPORATION.,
et al.,

Debtors.

------------------------------------------------------X

Chapter 11
Case No. 05-17930 (ALG)
(Jointly Administered)

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that the Official Committee of Unsecured Creditors of

Northwest Airlines Corporation, in the above-captioned cases, hereby appeals, pursuant to 28

U.S.C. § 158(a)(1) and Fed. R. Bankr. P. 8001(a), to the United States District Court for the

Southern District of New York from (i) the Decision Denying Success/Completion Fee Request

of Fee Request Portion of Lazard Frères & Co.'s and FTI Consulting, Inc.'s Final Fee

Applications [Docket No. 8103], and (ii) the Order Denying Allowance of Completion Fee

Requests of Lazard Frères & Co. LLC [Docket No. 8105], each entered by the United States

Bankruptcy Court for the Southern District of New York (Hon. Cecelia G. Morris) on February

29, 2008.  A copy of each of the decision and order (referenced above) are attached hereto,

respectively, as Exhibit A and Exhibit B.

The names of all parties to the Decision and the Order appealed from and the names,

addresses, and telephone numbers of their respective attorneys are as follows:

989184.1

| PARTIES | ATTORNEYS |
|---|---|
| Official Committee of Unsecured Creditors | OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.<br>230 Park Avenue<br>New York, New York 10169-0075<br>Telephone:    (212) 661-9100<br>Facsimile:    (212) 682-6104<br>Attention:    Scott L. Hazan  (SH 0650) |
| Lazard Frères & Co. LLC | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Telephone:    (212) 373-3000<br>Facsimile:    (212) 757-3990<br>Attention:    Alan W. Kornberg (AK-0756)<br>                    Philip Barber (PB-4021) |
| CarVal Investors, LLC | GOODWIN PROCTER LLP<br>599 Lexington Avenue<br>New York, New York 10022<br>Telephone:    (212) 813-8800<br>Attention:    Allan S. Brilliant<br>                    Brian D. Hail<br><br>KLESTADT & WINTERS LLP<br>292 Madison Avenue, 17th Floor<br>New York, New York 10017-6314<br>Telephone:    (212) 972-3000<br>Facsimile:    (212) 972-2245<br>Attention:    Sean Southard |
| Counsel for the Association of Flight Attendants - CWA, AFL-CIO | GUERRIERI, EDMOND, CLAYMAN & BARTOS, P.C.<br>1625 Massachusetts Avenue, N.W., Suite 700<br>Washington, D.C. 20036<br>Telephone:    (202) 624-7400<br>Attention:    Robert S. Clayman<br><br>MEYER, SUOZZI, ENGLISH & KLEIN, P.C.<br>1350 Broadway, Suite 501<br>New York, New York 10018<br>Telephone:    (212) 239-4999<br>Attention:    Hanan B. Kolko |

989184.1

2

| PARTIES | ATTORNEYS |
|---|---|
| United States Trustee for Region 2 | DIANA G. ADAMS<br>33 Whitehall Street, 21st Floor<br>New York, New York 10004-2112<br>Telephone:    (212) 510-0500<br>Facsimile:    (212) 668-2255<br>Attention:    Alicia M. Leonhard<br>                    Brian S. Masumoto |
| FTI Consulting, Inc. | KRAMER, LEVIN, NAFTALIS &<br>FRANKEL, LLP<br>1177 Avenue of the Americas<br>New York, New York 10036<br>Telephone:    (212) 715-9100<br>Facsimile:     (212) 715-8000<br>Attention:    P. Bradley O'Neill<br>                    Kenneth H. Eckstein |

Dated: New York, New York
          March 10, 2008

Respectfully submitted,

OTTERBOURG, STEINDLER, HOUSTON &
ROSEN, P.C.

By: _____
          Scott L. Hazan (SH 0650)
          230 Park Avenue
          New York, NY 10169
          (212) 661-9100
          (212) 682-6104

COUNSEL FOR OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF NORTHWEST
AIRLINES CORPORATION

989184.1                                      3

**Exhibit A**
**to**
**Notice of Appeal**

<u>Decision Denying Success/Completion Fee Request of Fee Request Portion of
Lazard Frères & Co.'s and FTI Consulting, Inc.'s Final Fee Applications [Docket No. 8103]</u>

See attached.

989184.1

UNITED STATES BANKRUPTCY COURT          **FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
In re:

NORTHWEST AIRLINES CORPORATION, *et al.*,

                                             Debtors.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Chapter 11

Case No. 05-17930 (ALG)

# A P P E A R A N C E S

GOODWIN PROCTER LLP
Counsel for CarVal Investors, LLC
By: Allan S. Brilliant, Esq.
Brian D. Hail, Esq.
599 Lexington Avenue
New York, NY 10022

KLESTADT & WINTERS, LLP
Counsel for CarVal Investors, LLC
By: Sean Southard, Esq.
292 Madison Avenue, 17th Floor
New York, NY 10017-6314

GUERRIERI, EDMOND, CLAYMAN & BARTOS, P.C.
Counsel for the Association of Flight Attendants – CWA, AFL-CIO
By: Robert S. Clayman, Esq.
1625 Massachusetts Avenue, N.W., Suite 700
Washington, D.C. 20036

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
Counsel for the Association of Flight Attendants – CWA, AFL-CIO
By: Hanan B. Kolko, Esq.
1350 Broadway, Suite 501
New York, NY 10018

DIANA G. ADAMS
United States Trustee for Region 2
By: Alicia M. Leonhard, Esq.
Brian S. Masumoto, Esq.
33 Whitehall Street, 21st Floor
New York, NY 10004-2112

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Counsel for Lazard Frères & Co., LLC
By: Alan W. Kornberg, Esq.
Philip G. Barber, Esq.
1285 Avenue of the Americas
New York, NY 10019-6064

OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.
Counsel for the Official Committee of Unsecured Creditors
By: Scott L. Hazen, Esq.
Brett Miller, Esq.
230 Park Avenue
New York, NY 10169-0075

KRAMER, LEVIN, NAFTALIS & FRANKEL, LLP
Counsel for FTI Consulting, Inc.
By: P.Bradley O'Neill, Esq.
Kenneth H. Eckstein, Esq.
1177 Avenue of the Americas
New York, NY 10036

## CECELIA G. MORRIS
## UNITED STATES BANKRUPTCY JUDGE

### DECISION DENYING SUCCESS/COMPLETION FEE REQUEST
### PORTION OF LAZARD FRÈRES & CO.'S AND
### FTI CONSULTING, INC.'S FINAL FEE APPLICATIONS

Before the Court are applications for compensation and reimbursement of

expenses by Lazard Frères & Co. ("Lazard") and FTI Consulting, Inc. ("FTI") who

served as financial advisors to the Official Committee of Unsecured Creditors

("Committee").

Lazard filed its final application for allowance of compensation and

reimbursement of expense for services rendered for the period October 6, 2005 through

May 31, 2007 ("Lazard Final Compensation App.") on July 30, 2007. Electronic Case

Filing Docket Number ("ECF Doc. No.") 7431.  Lazard requests compensation totaling

$8,873,560.13. The sum is made up of $5,455,645 in fees, expenses of $167,915.12 and a completion fee of $3,250,000. The Court entered an order granting $5,623,560.12 in fees and expenses, which comprises the non-success/completion fee portion of the Lazard Final Compensation App. on November 2, 2007. ECF Doc. No. 7749.

On July 30, 2007, FTI's filed its Fifth and Final Application for the allowance of compensation and for reimbursement of expenses for services rendered in these cases for the period covering October 6, 2005 through May 31, 2007 ("FTI Final Compensation App."). ECF Doc. No. 7430. FTI requests a fee of $2,600,000 and expenses of $2,796.23. Prior to this application, FTI requested $4,355,645 in compensation and $34,786.50 in expenses. The United States Trustee calculated FTI's final fee figure to be $6,955,645 with expenses of $37,582.73.[1] FTI originally requested a $1,500,000 as a success or completion fee; the amount was later reduced to $1,000,000.

Objections to both applications were filed by the Office of the United States Trustee ("Trustee"), CarVal Investors LLC ("CarVal") and the Association of Flight Attendants-CWA, AFL-CIO ("AFA"). On November 19, 2007 the Court conducted a trial on the Objections which was attended by counsel for FTI, Lazard, CarVal and the AFA. The parties exchanged post-trial briefs on December 21, 2007. ECF Doc. Nos. 7913, 7915, 7917, 7918, 7919 and 7920. The Trustee did not appear at the hearing, nor did she file a post-trial brief.

After considering the evidence and the arguments of Lazard, FTI, the Trustee, CarVal and AFA, the Court finds that the issue before it is simple. Professionals cannot claim entitlement to a success or completion fee under Bankruptcy Code Section 328(a)

---

[1] The Court awarded FTI its fees and expenses during the October 18, 2007 hearing. As of the date of this opinion, a complying order was not submitted.

without the Court first approving the standard by which the fee requested will be determined.  If a standard for determining a fee request is not pre-approved under Bankruptcy Code Section 328(a), the Court must use the standards outlined under Bankruptcy Code Section 330.  For the reasons explained below, Lazard's and FTI's requests for success or completion fees are denied under both standards. The following constitutes the Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

## JURISDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(b) and 157(a) and the standing order of referral to bankruptcy judges dated July 10, 1984, signed by Acting Chief Judge Robert J. Ward. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## BACKGROUND

The Court's findings of fact are based on the parties' submissions, documentary exhibits admitted in evidence including deposition transcripts, transcripts of Court proceedings, and the testimony of witnesses.  The facts in this section include only those necessary to understand the Objections.

On September 14, 2005 Northwest Airlines Corporation ("Northwest" or "Debtors") commenced this chapter 11 proceeding by filing a voluntary petition.  The United States Trustee formed the Committee on September 19, 2005.  Shortly thereafter the Committee began its search for financial advisors to assist it in the areas of auditing and investment banking. After interviewing several candidates, the Committee offered financial advisor positions to both Lazard and FTI in early October 2005.

4

Lazard and FTI negotiated their compensation for their work for the Committee for the rest of October 2005. Several possible arrangements were proposed, but the parties ultimately agreed that Lazard and FTI would be paid a fixed monthly compensation of $275,000 per month each and reimbursed for their actual and necessary expenses. It was also agreed both Lazard and FTI reserved the right to request a success or completion fee at the conclusion of the case. The fee would be subject to approval by both the Committee and the Court.

The Committee filed an application pursuant to Federal Rule of Bankruptcy Procedure 2014(a) for an order under sections 328(a) and 1103(a) of the Bankruptcy Code authorizing the employment and retention of FTI Consulting, Inc. as financial advisors on November 8, 2005 ("FTI Retention App."). ECF Doc. No. 952. The Committee explained FTI was needed to assist it with reviewing Northwest's' financial disclosures (i.e. schedules of assets and liabilities and monthly operating reports); reviewing Northwest's short term cash management procedures, employee benefit plans and disposition of assets; and to serve as a general business consultant. FTI Retention App. at ¶7. The terms of FTI's retention included a fixed monthly allowance of $275,000 plus reimbursement for necessary expenses. FTI also "reserved the right to request a success or completion fee which will be subject to approval by both the Committee and the Court." FTI Retention App. at ¶11. Neither FTI's Retention App. nor the Affidavit of Samuel Start dated November 8, 2005 accompanying FTI's Retention App. defines, identifies or otherwise explains the term "success or completion fee."

5

Chief Judge Bernstein[2] approved the FTI Retention App. on July 21, 2006 pursuant to 11 U.S.C. Sections 328(a) and 1103(a) ("FTI Retention Order").  ECF Doc. No. 3121.  The Court notes that J. Bernstein struck the second paragraph of FTI's proposed order ("ORDERED that the Application be, and it hereby is, granted") in the FTI Retention Order. FTI Retention Order at p.1. The Order also states "FTI shall be compensated in accordance with the procedures set forth in sections 330 [compensation of officers] and 331 [interim compensation] of the Bankruptcy Code ... ."  Paragraph 6 of the FTI Retention Order lists "FTI shall receive (a) its monthly compensation as specified in the [FTI Retention App.] and (b) reimbursement of ...expenses, which in each case shall not ... be subject to challenge except under the standard of review set forth in Section 328(a)."  The Court notes the terms "success" and "completion fee" do not appear in this list.  Lastly, the Trustee retained its right "to object to FTI's interim and final fee application on all grounds including but not limited to the reasonableness standard provided in Section 330 of the Bankruptcy Code."  FTI Retention Order at ¶7. The FTI Retention Order is silent as to FTI's right to request a completion/success fee at the conclusion of this case.

Lazard was retained by the Committee for a different function than FTI. According to the Committee's application filed on November 8, 2005, Lazard was retained by the Committee to review operating and financial information, conduct general due diligence on the Debtors' business, meeting with Debtors' management and participate in Committee meetings ("Lazard Retention App.").  ECF Docket No. 948 at ¶6.  An interim order authorizing the employment of Lazard was issued on November 29,

---

[2]  This matter was assigned to Judge Alan Gropper.  After the filing, certain matters were addressed by Chief Judge Stuart Bernstein.  Judge Cecelia Morris was assigned to decide the current matter.

2005. Judge Gropper signed a final order on July 20, 2006 ("Lazard Final Retention Order"). ECF Docket No. 3112. The Lazard Final Retention Order authorized retention of Lazard by the Committee pursuant to Bankruptcy Code Sections 328(a) and 1103(a) granted "... Monthly Advisory Fees [of $275,000 per month] and ... reimbursement of ... expenses, which in each case shall not ... be [challenged] excepted under the standard of review set forth in section 328(a) ...." Lazard Final Retention Order at p.2. Also, as with the FTI Retention Order, the Trustee retained its right to object to any fee application filed by Lazard on any grounds provided by the Bankruptcy Code "including without limitation, the reasonableness standard provided for in Section 330." *Id.*

The Lazard Final Retention Order also incorporated the terms of the Lazard Retention App. and the Committee's October 6, 2005 engagement letter ("Engagement Letter"). *Id.* (A copy of the Engagement Letter was attached to the Lazard Retention App. as Exhibit B.) Paragraph 18(c) of the Lazard Retention App. states:

> It is agreed that on all matters relating to [Lazard's] entitlement, if any, to an additional success or completion fee shall be deferred until the latter part of the [Northwest] chapter 11 case, and that [Lazard] shall be required to comply with the applicable notice procedures required by the Court and the [Trustee].

The Lazard Retention App. also states the "overall compensation structure ... is comparable to compensation generally charged by investment banking firms of similar stature to [Lazard] for comparable engagements ... " and the "compensation arrangements" were both "reasonable and market-based." Lazard Retention App. at ¶19. The Court notes the terms "success fee" and "completion fee" are not defined by the Lazard Retention Order, the Lazard Retention App. or the Engagement Letter, and the interpretation of these terms was left completely open ended.

## **Objections**

The Trustee, CarVal and AFA filed objections to the Lazard Final Compensation App. and the FTI Final Compensation App.

Trustee's Objection

The Trustee filed written a objection to the fees and expenses requested by Lazard and FTI in its September 4, 2007 filing ("Trustee's Objection"). ECF Doc. No. 7558. The Trustee argued that any amount a professional requests which is over and above its hourly rate should be considered a fee enhancement. Further, under the circumstances of these cases, the Trustee asserted that "fee enhancements are not warranted." Trustee's Objection, Section I. The Trustee explained that in order to merit a fee enhancement, professionals must prove their work was exceptional and their standard hourly rates did not fairly compensate for the services provided. *Id.* In this case, Debtors' "general unsecured creditors were not paid in full," Debtors' pre-bankruptcy equity was extinguished, and "[e]mployees, including pilots and flight attendants, were forced to take pay and benefit cuts so that Debtors could emerge from bankruptcy." *Id.* The Trustee concluded, in circumstances such as these, where creditors, equity shareholders and employees of the Debtors were forced to take less than their "entitlement," a fee enhancement to the Committee's professionals should not be countenanced.

The Trustee objected to FTI's request for a $1,500,000 completion fee. Because the Trustee did not file a supplemental objection to address FTI's voluntary reduction of its request to $1,000,000, the Court presumes that the Trustee's objection remains. The Trustee objected because "FTI provided no justification for the payment of an enhancement … ." *Id.,* Section IV, Part B, ¶2(b). The Trustee further argued because

FTI's "blended hourly rate was $727" it was "well compensated [for its work in these cases] at industry rates." *Id.* at ¶2(a) and ¶ 2(b).   The Trustee acknowledged the Committee's support of FTI's request, but argued that this is insufficient evidence under the reasonableness standard to warrant a fee enhancement over and above what FTI has already earned. *Id.*

In reference to Lazard, the Trustee's arguments parallel those it made in opposition to FTI's request and also requested Lazard's application for a success or completion fee be denied.  The Trustee notes that the Lazard's blended compensation rate was $876 per hour, and Lazard did not provide any evidence that this amount did not fairly compensate it for the services it provided. *Id.* at ¶3(a) and ¶ 3(b).

AFA's Objection

AFA objected to the Lazard Final Compensation App. and FTI Final Compensation App.in separate filings filed on September 4, 2007.  ECF Doc. Nos. 7565 and 7566, respectively.  AFA's arguments supporting its objection the fee requests of both Lazard and FTI are substantially similar.  For the sake of brevity, notations to AFA's arguments are in reference to its papers filed in opposition to the Lazard Final Compensation App..

AFA argued Lazard and FTI will be fairly compensated for their work in this matter without receiving an additional fee.  ECF Doc. No. 7566.  Furthermore, if the Court were to consider granting the fee request, Lazard and FTI should provide specific evidence to show that the quality of their services to the estate were superior to what was expected of them under their current hourly rates. *Id.* at p. 6.  AFA argued Lazard and FTI have not attempted to justify their entitlement to such a fee. *Id.* at p. 7.  AFA also

asserted the results attained in Debtors' reorganization "fall far short of the results …

courts have generally demanded before awarding a enhancement fee." *Id.* Moreover,

Lazard's and FTI's contribution to these results was "tenuous" at best. *Id.* at p. 9.

The AFA further noted throughout these proceedings, the "Court has striven to

establish a balance of sacrifice" and employees of the Debtors accepted reduced

compensation in order to ensure Debtor's viability. *Id.* at p. 10. AFA argued the "vast

bulk of cost-savings in these proceedings came from labor concessions … and [Lazard

and FTI] had little, if any, role in that process." *Id.* at p. 9. Given these circumstances

the AFA asserted it would be inappropriate and inequitable for the Court to grant a

success or completion fee to a professional that was not only fully compensated but also

refused to provide evidence why it is entitled to receive an additional award.

<u>CarVal's Objection</u>

CarVal included its objection to FTI's and Lazard's request for completion or

success fees its September 4, 2007 general objection ("<u>CarVal Objection</u>"). ECF Doc.

No. 7567. CarVal argued "in order to award [Lazard or FTI a success or completion fee],

the Court must … make a determination that the monthly fees previously requested by

Lazard and FTI … were 'improvident in light of developments not capable of being

anticipated' at that the time their retentions were approved." *Id.* at ¶29 (quoting 11 U.S.C.

§ 328(a).)

CarVal noted both Lazard and FTI were retained under Bankruptcy Code Section

328(a) which offers "increased protection" in the event a party in interest seeks to lower a

previously approved fee. But, argued CarVal, because neither firm set forth parameters

for the computation of a success or completion fee in their applications, they have not

met their burden of proof under Bankruptcy Code Section 328(a) and their requests should be denied. *Id.* at ¶32.

CarVal specifically challenged Lazard's Final Compensation Application, because it believed Lazard failed to address any circumstances where a completion or success fee would be justified. *Id.* at ¶33. FTI's right to a completion or success fee was also challenged by CarVal. CarVal found FTI's assertion that the services it performed in this case qualified it for a success or completion fee did not justify FTI's receipt of additional compensation, much less a fee that is 27% of its total compensation. *Id.* at ¶35.

## DISCUSSION

Lazard and FTI negotiated with the Committee for several weeks over the terms of their compensation for their work as financial advisors. After listening to the testimony presented at the November 19, 2007 hearing, it is clear that these terms were not the result of "bad drafting" or "mistake." On the contrary, the parties appeared to have created a practical solution for the time: set the amount of monthly compensation now and address the issue of a success, completion or other "back-end" fee at a later date.[3] For reasons explained below, the Court finds neither FTI's nor Lazard's requests for a success fee were "preapproved" in their retention applications under Bankruptcy

---

[3] For the purpose of this opinion, the Court does not distinguish between a success fee or a completion fee. Under the facts of this case, the Court deems these terms to be interchangeable, although logic may dictate otherwise. For example, it seems logical that a party is awarded a success fee after showing some proof of achieving a level above what was expected of it upon retention. Therefore use of the term "completion fee" in place of "success fee" could be an attempt to avoid demonstrating or qualifying the "success" of the professional. The term "completion fee" is a fee supposedly granted to professionals at the conclusion of a case. A fee of this kind would seem to reward professionals for nothing more than remaining employed by and loyal to a Committee, Debtor or Estate. It appears to the Court that the concept of a "completion fee," without further explanation or definition, would be contrary to the purposes of reorganization under the Bankruptcy Code.

Code Section 328.  Furthermore, their request for a success fee also fails to meet the standard outlined under Bankruptcy Code Section 330.

## I. Review of FTI's and Lazard's Request for Success Fees
### A. FTI

FTI was retained pursuant to Bankruptcy Code Sections 328(a) and 1103(a), which cover the compensation of professionals retained by a committee.  Section 328(a), in pertinent part, authorizes, with court approval, a "committee appointed under section 1102 of this title," to "employ … a professional person under section 327 or 1103 … on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328 (2008).  Section 1103(a) authorizes a creditor's committee, with court approval, to select and employ agents to represent to perform services on behalf of the committee.  11 U.S.C. § 1103 (2008).  FTI was to be compensated pursuant to the procedures set forth in Section 330 of the Bankruptcy Code, although its monthly compensation and expenses would not be challenged except under the standard of review established in Bankruptcy Code Section 328(a). FTI Retention Order at p.2.

Under Section 328(a), professionals such as FTI, may obtain pre-approval of their compensation arrangements from the Court.  The "pre-approval" affords the professional assurances the amount of compensation approved will not be modified by the Court unless it is proven that the amount was "improvident in light developments not cable of being anticipated at the time." *F.V. Steel & Wire Co. v. Houlihan Lokey Howard & Zukin Capital, L.P.*, 350 B.R. 835, 838-839 (Bankr. E.D.Wis. 2006) (citations omitted). It is clear from the FTI Retention Order that the monthly compensation agreement FTI arranged with the Committee was granted under Code Section 328. FTI is therefore

entitled to receive compensation of $275,000 per month plus reasonable expenses as a fee for its work on behalf of the Committee. The Court notes no objections as to the amount FTI is requesting as its monthly fees or reimbursable expenses were filed and the amount requested does not appear to be "improvident."

What is not clear in the FTI Retention Order is how the Court should consider FTI's request for a success fee. As noted previously, FTI's Retention Application requests the right to request a success or completion fee. A "right to request" was not incorporated in the FTI Retention Order. Also, neither the FTI Retention Order nor the FTI Retention App. define or otherwise quantify the terms "success" or "completion" or provide a high or a low, or a percentage, or a range, or a "ball park" figure to be considered by the Court when reviewing FTI's application. CarVal questioned, given these facts, whether FTI was entitled to request a completion or success fee given the terms of the FTI Retention Order. Although the Court understands the argument, it will not sustain an objection to FTI's right to request a success or completion fee on this ground. Whether or not it is provided by the FTI Retention Order, a professional may still have the right to request an additional fee, although the request would most likely be denied where there is no proper justification for support.

Bankruptcy Code Section "328 applies when the bankruptcy court approves a particular rate or means of payment, and § 330 applies when the court does not do so." *In re Airspect Air, Inc.*, 385 F.3d 915, 920 (6th Cir. 2004) citing *Peele v. Cunningham (In re Texas Sec., Inc.),* 218 F.3d 443, 445 (5th Cir. 2000); *See also In Circle K Corp. v. Houlihan Lokey Howard & Zukin, Inc. (In re Circle K Corp.),* 279 F.3d 669, 671 (9th Cir. 2002) (unless a professional retention application unambiguously specifies that it

13

seeks approval under section 328, it is subject to review under Section 330). The Court

finds FTI retained the right to request a success or completion fee under the Bankruptcy

Code. And the "particular rate" of the fee was not pre-approved in the FTI Retention

Order, the amount FTI requests for a success or completion fee is subject to evaluation

pursuant to Bankruptcy Code 330 standards.

B. Lazard

As with FTI, Lazard was also retained pursuant to Bankruptcy Code Sections

328(a) and 1103(a). Lazard Retention Order at p.2. The same analysis applied to FTI,

*supra*, leads the Court to the conclusion that Lazard is entitled to monthly compensation

of $275,000 per month and reimbursement for its expenses under 11 U.S.C. Section

328(a). Unlike in FTI's situation, it is clear to the Court that Lazard is entitled to seek a

"success" or "completion" fee since the reservation of this "right" was incorporated into

the Lazard Retention Order by way of the Lazard Retention App. Lazard Final Retention

Order at p.2. And, this is all Lazard is entitled to under Code Section 328(a). As the

Court noted previously, the terms "success fee" and "completion fee" are not defined by

any of the documents filed with the Court pertaining to Lazard's retention by the

Committee.

In Lazard's response to the objections of the Trustee, CarVal and AFA, it argued

that its compensation agreement was pre-approved by the Court and the payment of a

completion fee was contemplated in this agreement. ("Lazard's Response") ECF Doc.

No. 7586. Lazard further states that it should not be "penalized after-the-fact for having

accommodated the legitimate concerns of the Committee and [agreeing] to an approach

that provided an opportunity for a more accurate evaluation of the results of these cases

and Lazard's contribution thereto." Lazard's Response at ¶1.  The Court finds Lazard's

assertion to be a circular argument.  Lazard seems to argue because it agreed to have its

success fee evaluated in the context of the cases' outcome, its request for a success or

completion fee should not be questioned or evaluated "after the fact" because this would

penalize Lazard for agreeing to that very treatment.  Lazard also asserted that its receipt

of the "completion fee was integral to the parties' ability to reach an acceptable

engagement arrangement, was negotiated at arm's length with the Committee and is

"fair" and "industry practice." *Id.* at ¶2 and ¶9.  Again the Court disagrees with Lazard's

logic.  Lazard is obviously confusing a "right to request" a fee with "a right to receive" a

fee.

Applications to retain professionals must comply with both the Bankruptcy Code

and Federal Rules of Bankruptcy Procedure.  Retention applications of professionals are

governed by Bankruptcy Rule 2014, and in this district by its corollary, Local Rule 2014-

1.  Local Rule 2014-1 requires an "application for the employment of a professional

person pursuant to §§ 327 and 328 of the Bankruptcy Code [to] state the specific facts

showing the reasonableness of the terms and conditions of employment[.]"  The local rule

further states that the "terms of any retainer, hourly fee or contingent fee arrangement"

shall also be declared.  Bankr. S.D.N.Y. Loc. R. 2014-1 (2008).  Bankruptcy Rule 2014

requires "applications to be filed … and a copy of the application to be transmitted by the

applicant to the United States Trustee."  Fed. R. Bankr. Proc. 2014(a) (2008).

Furthermore "the application shall state … any proposed arrangement for compensation

… ." *Id.*

The Court disagrees with Lazard's statement that its compensation arrangement was pre-approved by the Court. It is true that its monthly compensation of $275,000 was approved in the Lazard Final Retention Order. However there were no "terms" set forth in the Lazard Retention App. informing the Court as to the proposed fee amount or the terms under which it would be earned. Thus the fee could not have contemplated – much less pre-approved. If such terms existed elsewhere, the failure to disclose them would violate Bankruptcy Rule 2014 and Local Rule 2014-1. A court can only approve compensation arrangements identified and defined in applications filed pursuant to applicable Bankruptcy Code and Rules. In stark contrast, the Lazard Retention App. lists monthly compensation and a right to request a success or completion fee. The Engagement Letter and the Lazard Retention App. are silent as to the definition of the terms "success fee" and "completion fee." Therefore, it is left to the Court to make a final determination as to their definition. Moreover, the right to request a completion or success fee in some unidentified amount is vastly different from receiving a $3,250,000 completion fee. The Court finds the receipt of such a fee was not previously approved by it under Bankruptcy Code Section 328. Therefore the Court will review Lazard's fee request pursuant to the standards outlined in Bankruptcy Code Section 330. *See Airspect Air, supra,* 385 F.3d at 920 (when a particular rate is not approved, Code Section 330 shall apply).

C. Committee's Arguments Supporting Lazard's and FTI's Fee Requests

In the Committee's Post-Trial Statement in support of Lazard's (and FTI's) fee request, it explained that the Committee "was not comfortable 'pre-approving' a completion fee amount for its advisors in the first few weeks of the case, when no one

could foretell how the case would end" ("Committee Post-Trial Statement"). ECF Doc.

No. 7920 at ¶2. The Committee further stated it "strongly believed that if there was a

favorable outcome in the case, and it was pleased with the performance of its financial

advisors, they would be entitled to a completion fee." *Id.* at ¶3. In a footnote, the

Committee referenced the deposition of R. Douglas Greco ("Greco Dep."). Mr. Greco is

the Vice President of Sales and Finance for Airbus Americas, a member of the

Committee. The Committee states: "[t]he Committee Chairperson testified that if the

unsecured creditors received a recovery of in excess of 20%, he would have expected that

the financial advisors would receive a completion fee." *Id.* at n.2 citing Dep. Tr. of R.

Greco Dep. at 38:2-16. Mr. Greco, during his cross-examination by counsel for CarVal,

was asked: "Did you express that personal opinion in October 2005 to anyone, anyone on

the committee?" *Id.* at 42:2-4. Mr. Greco answered: "Not that I recall." *Id.* at 42:5. Mr.

Greco was asked two additional questions: "Do you recall any discussion at the

committee as to whether a success fee would be paid if there was no liquidation or at any

particular level of recovery for the creditors' claim?" and "Do you recall any discussion

then with FTI about the circumstances under which any success fee or completion fee

would be paid in October 2005?" *Id.* at 42:6-10 and 42:12-15. The answer to both

questions was "No." *Id.* at 42:11 and 42:16. It is clear to the Court that although Mr.

Greco may have personally believed Lazard and FTI receiving a success or completion

fee in this case, his belief was not effectuated in the engagement letters, Lazard Retention

App. or the FTI Retention App. The other Committee members may not have shared in

Mr. Greco's belief. Therefore, the Committee's assertion concerning Mr. Greco's belief

that Lazard and FTI would receive a success or completion fee is not sufficient evidence that they are entitled to receive a fee under Section 328(a) of the Bankruptcy Code.

The Committee also argued its "actions were directly in accord with the [Trustee's] own guidelines set forth in the 'Jay Alix Protocol'." Committee Post-Trial Statement at ¶3. Both Lazard and FTI made similar arguments to the Court. The "Jay Alix Protocol" is the name given to an agreement between the United States Trustee for the District of Delaware and Jay Alix & Associates in the Safety-Kleen Corp. bankruptcy case ("Protocol").[4] The Protocol is organized into four sections, the second of which is titled "Compensation." FTI, Lazard and the Committee often quote part D of this section which directs that "[s]uccess fees or other back-end fees shall be approved by the Court at the conclusion of the case on a reasonableness standard and shall not be pre-approved under Section 328(a)." The Court emphasis that Part B of this same section states the "application to retain ... shall disclose the compensation terms including hourly rates *and the terms under which any success fee or back-end fee may be requested*." Protocol at p. 2.

As noted previously, the terms under which Lazard and FTI are to receive compensation outside of their monthly fees and reimbursement of expenses were not defined in any of the filed documents relevant to their retention. Therefore, the Committee was not in compliance with the Protocol when it made its arrangement with Lazard and FTI because the terms of the success/completion fee were never agreed upon,

---

[4]  The Protocol is applicable in the Southern District of New York and is posted on the website of the Office of the U.S. Trustee for the Southern District of New York. The Protocol can be accessed from the Department of Justice's homepage at
http://www.usdoj.gov/ust/r02/docs/chapt11/manhattan_retention/Jay_Alix_Protocol.doc.

or if agreed upon, were not disclosed. Thus the Committee's argument offered as support for Lazard's and FTI's requests for success or completion fees fails.

The Committee also argues that if this Court were to deny the professionals' success or completion fee requests, creditors' committees will lose a powerful bargaining position in future negotiations. The Court disagrees. It was the duty of the professionals and Committee to fully disclose the terms of the retention agreement in or at the time it made its applications to retain FTI and Lazard. The Court notes, as will be discussed below, it has reviewed engagement letters and retention applications filed in similar matters. In each instance, guidelines governing compensation were included – some engagement letters and applications (including one where Lazard was the financial advisor) dedicated several paragraphs to the discussion. Given what appears to be an industry practice to include details about compensation in an engagement letter, the Court does not understand why the Committee and professionals chose to wait until the conclusion of the case. At a minimum, definitions could have been included and parameters set.

D. Summary

The Court finds FTI and Lazard have the right to request a success or completion fee but their "right to request" does not automatically translate into a "right to receive." FTI asserted "[h]ad the Committee not agreed to negotiate a completion fee at the conclusion at the case, FTI would have sought a higher monthly rate of compensation." Reply of FTI Consulting in further support of the Fifth and Final Application ("FTI Reply"). ECF Doc. No. 7580. While the Court understands the argument, it bears noting that courts cannot operate in a vacuum and grant fee requests without some basis

19

for the decision. *See e.g., In re Mirant*, 354 B.R. 113, 129 n.35 (N.D. Tex. 2006) (the absence of standards to determine when a success or completion is earned is "contrary to the most basic axiom of bankruptcy law - that estates of bankruptcy debtors should not be diminished absent receipt of comparable value.") If a professional wishes its compensation package, including proposed success or completion components, to receive Section 328(a) review at the time of their final application for compensation, the elements under which the final compensation will be awarded must be revealed in the professional's retention application. Neither the Lazard Final Retention Order or the FTI Retention Order included the terms under which the professionals' requests for success or completion fees would be granted. Because of this, the Court considers both Lazard's and FTI's requests for a success or completion fee to be requests for fee enhancements. Therefore section 330 of the Bankruptcy Code is the appropriate standard of review.

## IV. Evaluation of Lazard's and FTI's Request for Fees under Section 330(a) of the Bankruptcy Code.

For the reasons stated above, the Court will consider Lazard's and FTI's requests for a completion or success fees under the standards set forth in Section 330(a) of the Bankruptcy Code.[5] Lazard and FTI have evaded the evidentiary standards outlined in

---

[5] Section 330(a) of the Bankruptcy Code states in pertinent part:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103--

    (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

    (B) reimbursement for actual, necessary expenses.

Section 330. Instead they attempted to substitute evidence supporting a "market" theory

(2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for--

(i) unnecessary duplication of services; or

(ii) services that were not--

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

(B) In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

(5) The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331, and, if the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate.

(6) Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application.

(7) In determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326.

11 U.S.C.A. § 330 (2008).

approach. As discussed, in Part IV.B., *infra*, the Court is not persuaded by this theory

absent compliance with the standards outlined in Bankruptcy Code Section 330(a).

Therefore the Court will analyze Lazard's and FTI's requests for a success or completion

fee pursuant to Section 330 using any evidence it can glean from the record and

submitted documents.

A. Discussion of Bankruptcy Code Section 330(a) and "lodestar"

Section 330(a) of the Bankruptcy Code requires the Court, after notice and a

hearing, to review of the services rendered by a professional person employed under

Section 1103 (powers and duties of committees) when determining reasonable

compensation. 11 U.S.C. § 330. Section 330(a) provides specific criteria for the court to

consider when making its determination, including the time the professional spent on the

services, the rates charged for the services and whether these rates were based on

"customary compensation charged by comparably skilled practioners in cases other than

cases under this title," whether the services will "necessary . . . or beneficial at the time at

which the service was rendered" and whether the services "were performed within a

reasonable amount of time commensurate with the complexity, importance, and nature of

the problem, issue, or tax addressed." *See* 11 U.S.C. § 330(a)(3). The Court must also

determine whether the services were or were not "reasonably likely to benefit the

debtor's estate" or "necessary to the administration of the case." *See* 11 U.S.C. §

330(a)(4). Fee applicants also bear the burden of proof for its claim for compensation.

*Howard & Zukin Cap. v. High River Ltd. P'ship,* 369 B.R. 111, 113 (S.D.N.Y. 2007)

(citing *In re Keene Corp.,* 205 B.R. 690, 695 (Bankr.S.D.N.Y.1997)).

"Section 330 of the Bankruptcy Code incorporates the lodestar analysis by requiring that the bankruptcy court consider the time spent upon legal services and the rate charged for those services." *D.A. Elia Constr. Corp. v. Damon and Morey, LLP*, 2006 WL 1720361 *5 (W.D.N.Y. Jun. 19, 2006). "The customary way to determine a reasonable fee is to begin with the 'lodestar' test, and then decide whether to apply any appropriate enhancements under *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-720 (5th Cir. 1974)." *In re Erik Stephen Brous*, 370 B.R. 563, 569 (Bankr. S.D.N.Y. 2007) (citing *Connolly v. Harris Trust Co. of Cal. (In re MiniScribe)*, 309 F.3d 1234, 1243 (10th Cir. 2002)). *See* 11 U.S.C. § 330(a)(3). Section 330 also requires the court to take into account other factors, such as the benefit of the services to the bankruptcy estate. *See* 11 U.S.C. § 330(a)(3). The "lodestar" approach involves multiplying the reasonable billing rate by the reasonable number of hours expended. *See Blum v. Stenson*, 465 U.S. 886, 898-901 (1984). The "lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' ... fee ..." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986). Thus, the "lodestar" already reflects the novelty and complexity of the matter, the quality of the representation and the results achieved. *See Blum* at 899 (an upward adjustment may be justified "only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was exceptional). "Enhancements to the 'lodestar' amount are proper only in rare and exceptional cases supported by specific evidence and detailed findings." *Brous, id.* (citations omitted).

23

FTI asserts it contributed to the successful restructuring of Debtors where unsecured creditors received a substantial recovery. FTI Fifth and Final Application at ¶14. FTI lists eight areas where it contributed to the "success" of Debtors' reorganization:

> Performed analyses of fuel hedging alternatives and advised the Committee to recommend that the Debtors consider various fuel hedging instruments. Such instruments were eventually purchased following discussions between the Debtors and Committee;

> Performed due diligence on the Debtors' purchase of regional jets and airline service agreements with regional carriers. The due diligence included an assessment of savings to the Debtors' estates and participation in negotiations over claims arising from these transactions;

> Performed a comprehensive analysis of the Debtors' compensation programs for non-union employees and assisted the Committee in negotiating certain changes to the programs;

> Challenged the unsecured claim asserted by non-union management employees and assisted the Committee in negotiating significant reductions;

> Monitored and evaluated financial and operational performance throughout the case and advised the Committee on appropriate issues;

> Analyzed proposed Plan of Reorganization structure, including consolidation of certain Debtors, treatment of guarantee claims and preparation of alternative scenarios for the Committee to consider in their deliberations;

> Advised the Committee in regards to important tax issues, including maximization of the Debtors' tax benefits (e.g. net operating losses) and assisted the Committee in negotiating modifications to stock trading restrictions following emergence.

FTI Fifth and Final Application at ¶14-¶16. FTI highlighted its efforts to implement fuel hedging alternatives. FTI explains:

> Debtors initially resisted departing from their budget to incur the additional costs associated with implementing [fuel pricing alternatives],

with FTI's advice and assistance in negotiations, the Committee persuaded
the Debtors to substantially increase their hedging position.

Post-Hearing brief of FTI Consulting ("<u>FTI Post-Hearing Br.</u>") at p.8.  ECF Doc. No.

7918.  FTI asserts, "overall, the evidence is uncontradicted that FTI did 'a very good job'

and the Committee was pleased with the advice rendered by FTI in these cases." *Id.*  FTI

also mentions that under Debtors' plan of reorganization, unsecured creditors received

compensation with a value between 66 an 83 cents on the dollar. *Id.* at p. 9.

Lazard argues that its proposed compensation, including receipt of a $3,250,000

completion or success fee is "reasonable, customary and consistent with the market for

such services."  Post-Trial brief of Lazard ("<u>Lazard Post-Hearing Br.</u>") at p.10.  ECF

Doc. No. 7913. Lazard explains that it is both an airline industry expert and a

restructuring expert, which made it "uniquely qualified to serve as the Committee's

financial advisor in these cases." *Id.*  Lazard explains that it "helped to develop the

Debtors' strategy with respect to critical aspects of these chapter 11 cases, including:

assisting Debtors to restructure their fleet; identifying and analyzing financing

opportunities available with respect to fleet arrangements; critically analyzed Debtors'

various business plans; participating in development of Debtors' strategy relating to

industry consolidating activity; participating in the design and implementation of

Debtors' successful equity rights offering; performed independent valuation analysis of

Debtors' business. *Id.* at pp. 10-11.  Lazard also states that it "played a key role in

working directly with the Debtors themselves." *Id.* at p.10.

B. <u>Discussion of "market-approach" to fee determination</u>

Lazard and FTI both argue that the Court should grant their request for

completion fees because the "payment of a completion fee to a financial advisor is

customary practice in large chapter 11 cases." FTI Reply; *see* FTI Supplemental Memo.

of FTI Consulting ("FTI Supp. Memo.") at p. 4, ECF Doc. No. 7793; *see* Lazard Post-

Hearing Br. In support of its argument, FTI cites to two cases: *In re Mirant Corp.*, 354

B.R. 113 (N.D. Tex. 2006), *In re NorthWestern Corp.*, 344 B.R. 40 (D. Del. 2006) and

one court order issued in *In re Adelphia Business Solutions, Inc.*, No. 02-11389 (Bankr.

S.D.N.Y.). The Court finds the facts of all three distinguishable from this case. FTI also

cited to fee applications, filed in what FTI deemed to be cases similar to Debtors', and

professionals received fees outside of their monthly compensation. The Court has

reviewed these applications and found each to be distinguishable.

[1] Case Law

In *Mirant*, the court granted financial advisors' applications for success fees. The

court noted that the applications were made pursuant to Bankruptcy Code Section 328

and "under controlling precedent …[of the Fifth Circuit], the court [had] little discretion

whether to grant payment of the success fees." *Mirant*, 354 B.R. at 127. The financial

advisors' retention agreements considered in *Mirant* included monthly compensation,

reimbursement for expenses and a "'success fee' to be paid in the event of a successful

end to the Debtors' cases." *Id.* The court noted that the "success" fee (also known as

restructuring and transactional) portion of the agreements broadly defined the term. *Id.* at

128. For example, one financial advisor "negotiated [a] 'restructuring fee' [that] was

payable 'upon consummation of a plan of reorganization of [Mirant] or any of its

subsidiaries.'" *Id.* at 128 n.31. Another advisor's fee "was due upon the closing of any

'Restructuring,' a term broadly defined to include confirmation of a plan or 'any

recapitalization or restructuring' of the Debtors' equity or debt." *Id.* Yet another advisor's

" 'Transaction Fee' was to be calculated by a formula based upon return to MAG creditors." *Id.* The Court easily distinguishes the success fees approved in *Mirant* from the success fees requested by Lazard and FTI. Each of the financial advisors discussed in *Mirant* included terms, although "broadly defined", in their retention agreements defining when they would be entitled to receive a fee over and above their monthly compensation. As stated earlier, Lazard and FTI did not.

In *In re NorthWestern Corp.*, the creditors' committee of NorthWestern Corporation retained Lazard Frères & Co., LLC ("Lazard") as its financial advisor in connection with its matter filed in the United States Bankruptcy Court in the District of Delaware ("Del. Bankr. Court"). The committee's application to retain Lazard was approved by the court pursuant to Bankruptcy Code Sections 328 and 330. "An Engagement Letter was submitted with the application outlining the terms of Lazard's compensation, which consisted of $200,000 a month, plus expenses, and a $5.5 million Restructuring Fee." *NorthWestern,* 344 B.R. at 41. "Once the conditions contained in the Engagement Letter were fulfilled, Lazard requested final approval of its Restructuring Fee." *Id.* The bankruptcy court denied Lazard's request for a restructuring fee despite the court-appointed fee auditor's statement that the fee was reasonable and Lazard's proffer to establish that its fee request fee was well within the range for comparable cases. *Id.* at 42. The district court overturned the bankruptcy court's ruling and granted Lazard its restructuring fee because it was previously approved by the bankruptcy court pursuant to 11 U.S.C. Section 328.

The Court reviewed the *NorthWestern* Committee's Application to Employ Lazard Frères & Co., LLC, No. 03-12872, ("NorthWestern Committee's Application").

Bankr. D. Del. ECF Doc. No. 39. Unlike in the Lazard Retention App. in this case, Lazard's compensation arrangement with the *NorthWestern* Committee was discussed in detail and the terms of Lazard's restructuring fee were disclosed in the Committee's Application.  Furthermore, a copy of the engagement letter, which defined Lazard's restructuring fee, was filed as an exhibit to the *NorthWestern* Committee's Application. *Id.* at pp.8-11 and Ex. C at p.3.  Unlike the *NorthWestern* Committee's engagement letter, the Engagement Letter in this case did not define completion or success fee. Nor did it provide guidelines for determining the amount of the fee. Moreover, the Del. Bankr. Court's order granting the Committee's Application in *NorthWestern* also incorporated the terms of the engagement letter between the committee and Lazard. *See* Bankr. D. Del ECF. Doc. No. 199.

Lazard cites to *Howard* for the position "the Second Circuit has established a 'market-driven' approach to fees awarded to professionals …" *Howard v. High River Ltd. P'ship,* 369 B.R. 111, 114 -115 (S.D.N.Y.2007) (citing *In re Ames Dept. Stores, Inc.,* 76 F.3d 66, 71 (2d Cir.1996)).  The decisions in both *Howard* and *Ames* are also distinguishable from the facts before this Court.   In *Howard* the bankruptcy court's decision to award Houlihan Lokey Howard & Zukin Capital ("Houlihan") approximately $4 million in fees (less $2 million previously received) related to financial restructuring services it provided to XO Communications ("XO") was upheld. 369 B.R. at 112. The engagement letter signed by Houlihan and XO provided that Houlihan was to be paid a monthly fee of $250,000 ($25,000 less per month than what Lazard and FTI are entitled to receive under their retention orders). *Id.* In the event that certain restructuring transactions occurred, Houlihan would also be entitled to receive a transaction fee

calculated as a percentage of XO's outstanding debt, reduced by the total amount of monthly fees it was previously paid. *Id.* The court used the standards outlined under Section 330 to make this determination. *Id.* at 115. In the case at bar, neither the Lazard Final Retention Order or the FTI Retention Order references or incorporate by reference, any objective guidelines to determine whether they are entitled to a success, completion fee much less how much the fee should be. The Court also notes the standards outlined under Bankruptcy Code Section 330, and not Bankruptcy Code Section 328, were used in *Howard.*

The facts in *Ames* are also distinguishable. Briefly, debtor's counsel in *Ames*, Skadden Arps Meager & Flom ("Skadden") moved in district court to appeal an order of the bankruptcy court. The district court denied the appeal and "*sua sponte* and without notice, ... decided that Skadden was not entitled to any fees for its services in connection with the appeal." *In re Ames Dep't Stores*, 76 F.3d at 69. Skadden then filed a fee application with the bankruptcy court. The bankruptcy judge denied the application pursuant to the district court's ruling. *Id.* The Second Circuit remanded the case directing the bankruptcy court to review Skadden's fee request under what has become known as the "market-driven approach." The bankruptcy court was directed to reconsider its decision denying Skadden's fee while keeping in mind "'the statute's aims that attorneys be reasonably compensated ....'" *Id.* at 71 (citation omitted). Furthermore, "the bankruptcy court should [review the fee request] in an objective manner, based upon what services a reasonable lawyer or legal firm would have performed in the same circumstances." *Id.* at 72 (citations omitted). The Second Circuit found Skadden did need not show an actual benefit to the estate before it was allowed to collect its hourly

fee. However, the fee Lazard and FTI are requesting are entirely different. Lazard and FTI have already earned a monthly fee of $275,000 plus expenses and are now requesting an additional amount over and above this sum. Lazard and FTI were awarded this fee with having to demonstrate actual benefit to the estate.

[2] Retention applications filed in other cases

FTI cites to several retention applications filed in large chapter 11 cases filed in courts through out the United States as support for its theory that it is entitled to a success or completion fee because it is a market standard. The Court has reviewed each application and finds them to be distinguishable from the facts presented.

FTI provided the Court with a copy of the June 16, 2004 Order granting compensation in *In re Adelphia Business Solutions, Inc.*, No. 02-11389 (Bankr. S.D.N.Y.) at ECF Doc. No. 1807. ("June 16th Order"). FTI refers the Court to the fact that two professionals (Jefferies & Co., Inc. and Ernst & Young Corporate Finance LLC) received either a financing fee or a success fee for their work in this matter. Jefferies & Co., Inc. ("Jefferies") was granted a "financing fee" of $1,025,000, and Ernst & Young Corporate Finance LLC was granted a success fee of $588,000. Jefferies was employed as Debtors' financial advisors in the case. Adelphia Business Solutions ("Abiz") filed an application to employ Jefferies ("Jefferies Application") on May 17, 2002 and included a copy of its engagement letter with Jefferies as an exhibit ("Jefferies Engagement Letter"). ECF Doc. No. 172, Exhibit A. As per the Jefferies Engagement Letter, Jefferies was to receive a monthly fee of $175,000 and a $4,000,000 "reorganization fee" payable in the event Abiz's plan was consummated. Unlike the FTI Retention Order, the order approving Jefferies' retention incorporated the terms of the Jefferies Engagement

Letter, including Jeffries' right to a "reorganization fee" in the text of the order. *Id.* at ECF Doc. No. 382.

Ernst & Young Corporate Finance LLC ("E&Y") was retained as the financial advisor for the Abiz unsecured creditors' committee ("Abiz Committee"). As mentioned earlier, it too was granted a fee outside of its monthly compensation. The Abiz Committee's application to retain E&Y, unlike the FTI Retention App. and the Lazard Retention App., included language detailing the terms under which E&Y would earn a success fee:

> Upon this Court's approval and subject to confirmation of a plan of reorganization, [E&Y] shall be entitled to request the Success Fee provided however, that such fee will be a minimum of $250,000 and a maximum of $750,000. Twenty five percent (25%) of the Monthly Advisory Fees will be treated as a credit in the calculation of the Success Fee.

*Id.* at ECF Doc. No. 204 at ¶¶ 18-21. E&Y and Jefferies disclosed the terms and provided a range in how much they would be requesting as a "back end fee." In the case at bar, neither Lazard or FTI defined how much they anticipated requesting as a success or completion fee. They simply did not provide the Court or the parties in interest with objective guidelines or protocols with which to evaluate their request.

In support of its "market-driven" argument, Lazard cites "two recent chapter 11 cases – Delta Airlines and United Airlines – in which the compensation paid to financial advisors is particularly relevant" to the case at bar. The Court reviewed the fee applications, in detail, and finds neither are analogous.

Delta Airlines filed a chapter 11 case in the Bankruptcy Court for the Southern

District of New York under index number 05-17923 ("Delta"). Delta's unsecured

creditor's committee ("Delta Committee") retained Houlihan Lokey Howard & Zukin

Capital, Inc. ("Houlihan") as its financial advisor on September 29, 2005. Lazard states

Houlihan was granted a "success fee" of $5,000,000 by the court on October 5, 2007.

Houlihan's Fifth Interim and Final Application for Compensation ("Houlihan App."),

ECF Doc. No. 6331, indicates the Houlihan App. requested "a 'Transaction Fee' of

$5,000,000.00 (as described in the 'Official Committee Engagement Letter')." Houlihan

App. at p. 2. The "Official Committee Engagement Letter" states Houlihan will receive

a monthly fee of $200,000 (which the Court notes is $75,000 less per month than Lazard

and FTI received in the case at bar), expenses, and a "Transaction Fee." The "Official

Committee Engagement Letter" describes the "Transaction Fee" as follows:

> In addition to the Monthly Fees, Houlihan Lokey shall be entitled to an
> additional fee to be paid in cash by the Debtors of $5,000,000 (the
> "Transaction Fee"). The Transaction Fee shall be earned upon the
> confirmation of a Chapter 11 plan of reorganization or liquidation, the
> terms of which are approved by the Committee ..., and shall be paid on
> the effective date of such a Chapter 11 plan. If requested by the
> Committee, after 24 months from the Effective Date, Houlihan Lokey
> shall credit up to 100% of the Monthly Fees to be paid to Houlihan Lokey
> thereafter against the Transaction Fee, provided however, in no event shall
> the Transaction Fee be reduced to less than zero.

Houlihan App., Ex. B (Official Committee Engagement Letter). The court approved the

retention of Houlihan on an interim basis on December 21, 2005. ("Houlihan Retention

Order"). ECF Doc. No.1671. The Houlihan Retention Order incorporates by reference

the terms of "Official Committee Engagement Letter." This Court notes that the

"Official Committee Engagement Letter" not only references but also defines the terms

under which Houlihan would receive a "success fee." As discussed earlier, Lazard's

Engagement Letter did not do the same. Also unlike Houlihan, none of the materials filed pertaining to Lazard's or FTI's retention explain how a "success" or "completion" fee will be determined or derived.

At Lazard's suggestion, the Court also review the compensation arrangement for Saybrook Restructuring Advisors, LLC ("Saybrook") in *In re UAL Corp.*, Case No. 02-48191 filed in the Northern District of Illinois. Lazard Post Trial Brief p. 11. In 2003, Saybrook was retained by the unsecured creditors' committee ("UAL Committee") to be its financial advisor in that case. An engagement letter summarizing the terms of Saybrook's retention by the UAL Committee was issued on March 17, 2003 ("Saybrook Engagement Letter").[6] A copy of the Saybrook Engagement Letter was filed with court as an exhibit to the Committee's March 27, 2003 Application to retain Saybrook ("Saybrook Retention Application") Bankr. N.D. Ill. ECF Doc. No. 1919. (A copy of the Saybrook Engagement Letter can also be found as Exhibit C to Saybrook's Thirty-third Interim Application and Final Application for Compensation. ECF Doc. No. 15507.) The court granted the Saybrook Retention Application on April 16, 2003 ("Saybrook Retention Order"). Bankr. N.D. Ill. ECF Doc. No. 2136. The Saybrook Retention Order incorporated by reference the terms of the Saybrook Engagement Letter and the Saybrook Retention Application.

Saybrook's compensation arrangements are outlined on pages 7-9 of the Saybrook Retention Application. The Court notes Saybrook was entitled to receive a monthly fee of $250,000 for six months and $200,000 per month thereafter. The terms of an "incentive fee" are also outlined. Saybrook Retention Application at p. 8. While the

---

[6] The Court noticed that Dana J. Lockhart, of Airbus North America signed the Saybrook Engagement Letter on behalf of the Committee. Mr. Lockhart testified by affidavit in this matter.

terms are too lengthy to reproduce here, the Court notes that they are extremely detailed,

and provide extensive guidelines to determine not only the amount, but what

circumstances will prompt Saybrook to earn such a fee and payment method. Saybrook

Retention Application at p. 9.  Again, the FTI Retention App., the Lazard Retention App.

and Lazard's Engagement Letter did not meet this standard. In fact all three documents

silent on this issue.

The Court also reviewed the retention applications for the Debtor's financial

advisors:  Evercore Group LLC  ("Evercore App.") and Seabury Group LLC ("Seabury

App."). ECF Doc. Nos. 4139 and 37, respectively.  As with every other application

reviewed by this Court, both the Evercore App. and the Seabury App. listed the amount

of compensation requested by the financial advisor.  The Evercore App. provided

guidelines as to when the financial advisor will receive a success, completion or other

fee.  Specifically, paragraph 13 of the Evercore App. states:

> With respect to the financial advisory services to be provided by Evercore
> pursuant to the Engagement Letter, the Debtors have agreed to pay (i) an
> upfront fee of $275,000, which will be paid to Evercore upon entry by the
> Court of an order approving the retention described herein; (ii) a monthly
> fee of $75,000 per month, effective as of November 1, 2006, (iii) a
> deferred advisory fee of $3 million payable upon the Debtors' emergence
> from bankruptcy and (iv) if an M&A Transaction (as defined in the
> Engagement Letter)[7] is consummated, a transaction fee of $2 million
> payable on the closing of the M&A Transaction.

The Seabury Application includes a copy of the engagement letter between

Seabury Group LLC ("Seabury") and Northwest ("Seabury Engagement Letter"). Section

2 of the Seabury Engagement Letter explains in detail what the financial advisor

---

[7] The December 4, 2006 engagement letter between Evercore and the Debtors further details Evercore's
compensation schedule and was filed with the Court as an exhibit to application. Evercore Application, Ex.
B. The final order approving Evercore's Application incorporated the terms of its engagement letter. ECF
Doc. No. 5797.

anticipated receiving as compensation and included schedules outlining the conditions under which it would be entitled to receive success fees. Seabury App., Ex. B (copy of Seabury Engagement Letter) at pp. 4-6 and 10-14. Unlike the FTI Retention Order, the Seabury Engagement Letter was incorporated into the court's order approving its retention. ECF Doc. No. 1462.

C. Summary

After considering all of the evidence presented, the Court denies both Lazard's and FTI's request for a success or completion fee under Bankruptcy Code Section 330. It is unclear to the Court whether, with reasonable certainty, the "successes" being claimed by Lazard and FTI are solely attributable to either professional. The Court is apprehensive, under the facts presented in this case, that multiple professionals may claim large bonuses or "completion fees" by claiming responsibility for the same "successes."

It appears both Lazard and FTI performed analyses and tasks appropriate for an engagement of this kind. Furthermore, a successful reorganization is precisely the result contemplated by Congress when it enacted chapter 11 of the Bankruptcy Code. *Pierson v. Creel (In the matter of Consol. Bancshares, Inc.)*, 785 F.2d 1249, 1257 (5th Cir. 1986) citing *In re Union Cartage Co.,* 56 B.R. 174, 178 (Bankr. N.D.Ohio 1986). Therefore, under Bankruptcy Code Section 330(a)'s standards, the Court is not convinced that evidence of a successful reorganization automatically rewards professionals with additional fees. That is, unless the Court preapproved the terms for those fees, under Bankruptcy Code Section 328.

CONCLUSION

The Court views the issue before it as a simple one. Neither Lazard nor FTI included terms under which it would be entitled to receive a success or completion fee in the FTI Retention App., Lazard Retention App. or Lazard's Engagement Letter. Nor were any terms incorporated into to their retention orders. Therefore, only their rights to receive compensation of $275,000 per month, reimbursement for reasonable expenses and the "right to request a success or completion fee" are entitled to consideration under Bankruptcy Code Section 328(a)'s "improvident" standard.

Lazard argued "prior to accepting an engagement" it "simply makes a 'business judgment' with respect to the amount of compensation it needs to take on the engagement ..." Lazard Post-Trial Brief at p.9. The Court finds Lazard and FTI did make "business" decisions when they agreed to accept the compensation packaged offered to it by the Committee. Lazard and FTI received exactly what they bargained for – the right to make a request. Both financial advisors are sophisticated parties who touted their experience in other chapter 11 actions both in their papers and during the November 19, 2007 hearing. Lazard and FTI knew (or should have known) that the "right to deny" a request is the companion to the "right to make" the same request.

The Court gave both parties several opportunities to support their fee requests, allowed discovery, conducted a hearing and accepted any paper (brief, statement or otherwise) they chose to submit. The Court considered the evidence provided and reviewed fee applications cited by Lazard and FTI as support for their arguments. It finds neither professionals' application for a success or completion fee met the standards

36

outlined under Bankruptcy Code Section 330. Therefore their request for a success or

completion fee is also denied on these grounds.

Dated: Poughkeepsie, New York    /s/ Cecelia Morris
   February 29, 2008    _____
               Cecelia G. Morris
               United States Bankruptcy Judge

**Exhibit B**
**to**
**Notice of Appeal**

<u>Order Denying Allowance of Completion Fee Requests of</u>
<u>Lazard Frères & Co. LLC [Docket No. 8105]</u>

See attached.

989184.1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
In re:

NORTHWEST AIRLINES CORPORATION, *et al.*,

                                  Debtors.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Chapter 11

Case No. 05-17930 (ALG)

## ORDER DENYING ALLOWANCE OF COMPLETION FEE REQUESTS OF LAZARD FRÈRES & CO. LLC

Upon consideration of the Final Application (the "<u>Application</u>") of Lazard

Frères & Co. LLC ("<u>Lazard</u>") filed on July 30, 2007, financial advisor to the Official

Committee of Unsecured Creditors of Northwest Airlines Corporation (the

"<u>Committee</u>"), in the above captioned cases, for an order approving and authorizing a

completion fee in the amount of $3,250,000 and it appearing that this Court has

jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing

that this proceeding is a core proceeding pursuant to § 157(b)(2); and due and proper

notice of the Application having been provided pursuant to Rule 2002(a)(6) of the

Federal Rules of Bankruptcy Procedure; and it appearing that no other or further notice is

necessary; and this Court having reviewed the Application; and based on the record of

these cases and for the reasons set forth in its opinion issued on today's date, it is hereby

      ORDERED that the request for a completion fee is hereby denied.

Dated: Poughkeepsie, New York
       February 29, 2008

                /s/ Cecelia Morris
                _____
                HONORABLE CECELIA G. MORRIS
                UNITED STATES BANKRUPTCY JUDGE